RECEIVED
SDC, WESTERN DISTRICT OF L
ROBERT H. SHEMWELL, CLERK
SHREVEPORT. LOUISIANA
DATE  2  12  07

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| WILLIAM O. SCALLION | CIVIL ACTION NO. 06-0147 |
| VERSUS | JUDGE DONALD E. WALTER |
| RED RIVER PARISH, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Doc. #45] filed on behalf of defendants, Red River Parish Sheriff Johnny Ray Norman, Tracy Scott, Sidney Jacobs and John Mahfouz, and a Motion for Summary Judgment [Doc. #47] filed on behalf of defendant, Alvie Myers pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes these motions. For the reasons assigned herein, defendants' motions are **GRANTED** and plaintiff's claims are **DISMISSED**.

## STATEMENT OF THE CASE

Plaintiff, William O. Scallion ("Scallion"), brings this action against Sheriff Johnny Ray Norman ("Sheriff Norman") in both his individual and official capacities, and against Alvie Myers ("Myers"), Tracy Scott ("Scott"), Sidney Jacobs ("Jacobs") and John Mahfouz ("Mahfouz") in their individual capacities asserting conspiracy, false arrest and unlawful search and seizure claims under 42 U.S.C. § 1983.[1] Plaintiff's claims arise out of his arrest, the search of his vehicle and the resulting seizure of various items in Red River Parish on July 30, 2004.

Some time in July, 2004, Myers, then employed as a Probation and Parole Officer for the

---

[1] Plaintiff's claims against the Red River Parish Police Jury were voluntarily dismissed while the claim against Ronnie Quick were dismissed in August 2006 for failure to timely effect service.

State of Louisiana, received what Myers believed to be trustworthy information that drugs were coming out of the residence of Tommie Sherie Lambert ("Lambert")[2] and James Harvey ("Harvey") and being sold in Red River Parish. Affidavit of Alvie Myers ("Myers Aff."), ¶7(b); Suppression Hearing Transcript ("Hrg. Tr."), pp. 23-26. The person from whom Myers received the information had provided reliable information in the past. Hrg. Tr., pp. 25-26. When Myers received this phone call, Harvey was a probationer of Myers with a criminal history of a drug offense. Myers Aff., ¶7(b); Hrg. Tr., pp. 21-22.

Myers advised Scott, a Red River Parish Sheriff's Deputy, that Myers had received information that drugs would be transported into Red River Parish by Lambert. Affidavit of Tracy Scott ("Scott Aff."), ¶3(a); Hrg. Tr., pp. 69-70. Scott had known Myers as a Probation Officer for approximately thirteen years and had successfully relied upon information provided him by Myers for the past ten years. Scott Aff., ¶3(b); Hrg. Tr., p. 70. Myers and Scott contacted Ronnie Quick ("Quick"), a Deputy with the Natchitoches Parish Sheriff's Office, to obtain more information on Lambert because Quick lived near Harvey and Lambert. Myers Aff., ¶7(c); Hrg. Tr., pp. 14-19, 71. Quick advised Myers and Scott that he thought drugs were being sold out of Lambert's house due to the amount of traffic at the house consistent with activities related to controlled dangerous substances, concerned citizen calls regarding the foot traffic and Quick recognizing many of Lambert's visitor's from his law enforcement experience. Hrg. Tr., pp. 5-7, 18-19; Myers Aff., ¶7(c).

At some point prior to Scallion's arrest on July 30, 2004, Scott was present while Myers

_____

[2]According to unsupported allegations in Scallion's Opposition to the multi-defendant Motion for Summary Judgment, Lambert is Scallion's former spouse.

listened in on a phone conversation between a confidential informant and Lambert. Scott Aff., ¶3(c); Myers Aff., ¶7(d). During the conversation, Myers heard Lambert state that she would be bringing methamphetamines into Red River Parish in a green Ford pick-up truck on the afternoon of July 30, 2004, Myers Aff., ¶7(d); Myers so advised Scott. Scott Aff., ¶3(d); Myers Aff., ¶7(e). Scott alerted other Red River Parish law enforcement officials of the potential transportation of illegal drugs into Red River Parish by Lambert, and a patrol of the area for a green Ford pick-up truck ensued. Scott Aff., ¶3(f); Hrg. Tr., pp. 73-74.

The truck was located in the afternoon on July 30, 2004 in a shopping center parking lot in Coushatta, Red River Parish, Louisiana, and surveillance of Lambert, her passengers and the vehicle was maintained. Hrg. Tr., p. 74; Myers Aff., ¶7(f). It was determined that Lambert was driving the green Ford pick-up truck. Scott asked Jacobs, a Red River Parish Sheriff's Office patrol officer, in a marked unit, to stop the truck. Hrg. Tr., pp. 74-75, 95. Jacobs pulled the green Ford pick-up truck over on Highway 71 in a parking lot without incident. Id. at pp. 75, 95, 115-116. The other officers who arrived on the scene shortly thereafter, and who have been named as defendants in this matter, were Scott, Myers and Red River Parish Sheriff's Deputy Mahfouz, canine patrol. Id. at p. 116.

Inside the green Ford pick-up truck were Lambert, the driver, Scallion and Lambert's two children. Myers Aff., ¶7(g). Myers spoke with Lambert with whom he was acquainted; Lambert asked Myers and another agent to take her two children home. Id. at ¶7(h). With gun drawn, Scott went to the passenger side of the truck and ordered Scallion out of the vehicle. Hrg. Tr., pp. 97-98. Scott performed an unremarkable pat down search of Scallion, and then handcuffed him. Id. at p. 98. Scott advised Scallion that he had received a call that his vehicle was transporting illegal drugs. Id. Scott asked Scallion for consent to search his vehicle; Scott testified at the hearing that Scallion

3

said "yes". Id. at pp. 98-99.  Scallion asserts that if he gave verbal consent, it was coerced.

Jacobs obtained a consent to search form that was read "verbatim" by Jacobs to Scallion. Hrg. Tr., pp. 118-119.  Scallion's signature appears on the consent form.  Defendants' Exh. D-1; Affidavit of John Mahfouz ("Mahfouz Aff."), ¶2(d).  Myers left the scene of the stop to take Lambert's children home when the search of Scallion's truck began.  Myers Aff., ¶7(h).  Jacobs, Mahfouz and Scott participated in the search of Scallion's vehicle which took approximately five to ten minutes.  Hrg. Tr., pp. 121-122, 129.  The following items, among others, were found in the truck: $856.00 in cash, numerous plastic bags containing powder residue, prescription drugs, a handgun and a Carmex container later determined to contain methamphetamine.  Hrg. Tr., pp. 79, 102; Scott Aff., ¶3(i).  A probable cause affidavit for arrest was subsequently submitted and judicially approved.  Hrg. Tr., pp. 102-103.

Scallion and Lambert were charged with, inter alia, possession with intent to distribute a controlled dangerous substance, namely methamphetamine.  Plaintiff filed a motion to suppress the evidence obtained during the search of his vehicle which was granted on March 29, 2005.  At the request of the State, the court ordered the charges against Scallion and Lambert nol prossed. Scallion filed the case sub judice on January 27, 2006.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

4

(1986).  An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999).  The moving party is not required to negate the elements of the non-moving party's case.  Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986).  The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence.  Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts.  Id.

Pursuant to Local Rule 56.1, the moving party shall file a Statement of Uncontested Facts as to which it contends there is no genuine issue to be tried.  Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried."  All material facts set forth in the statement

5

required to be served by the moving party "will be deemed admitted, for the purposes of the motion, unless specifically denied." Local Rule 56.2.

## LAW AND ANALYSIS

### I.    §1983 Claims Against the Individual Defendants.

Plaintiff brings §1983 claims against defendants Jacobs, Mahfouz, Myers and Scott[3] in their individual capacities alleging claims of conspiracy, false arrest and unlawful search and seizure. Defendants assert they are entitled to qualified immunity. This Court agrees.

The determination of immunity is a threshold question that must be resolved inasmuch as it determines a defendant's immunity from suit rather than immunity from damages. Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993). The court must use a two-step analysis to determine whether a defendant is entitled to qualified immunity: (1) do the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right; and (2) if there is such a violation, was the right clearly established - that is, would it be clear to a reasonable officer that his conduct was unlawful in the situation he confronted? Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004), citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992).

The doctrine of qualified immunity shields public officials "performing discretionary functions 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Fraire, 957 F.2d at 1273, quoting

---

[3]Plaintiff's claims against Sheriff Norman are discussed separately below.

6

Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).  The

qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate

the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

### A.    Claims Against Alvie Myers.

It is undisputed that Myers did not actually arrest or detain plaintiff.  See Deposition of

William O. Scallion ("Scallion Depo."), pp. 51-52; Myers Aff., ¶7(i-p); Scott Aff., ¶3(k).  It is also

undisputed that Myers did not participate in the pat down search of plaintiff or the search of

plaintiff's vehicle.  Id.  Thus, the only allegation pertinent to Myers is the conspiracy allegation

related to the "instigation" of plaintiff's arrest.

The elements of a civil conspiracy are (1) an actual violation of a right protected under

§1983, and (2) actions taken in concert by the defendants with the specific intent to violate the

aforementioned right.  Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999), abrogated on other

grounds, Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003).  A conclusory allegation of conspiracy

is insufficient.  Rodriguez v. Neeley, 169 F.3d 220, 222 (5th Cir. 1999).  Specifically, plaintiff must

identify an unconstitutional objective of any agreement between Myers and the other law

enforcement officers involved in the stop at issue.  Id.

First, as discussed below, this Court finds that there has been no constitutional violation.

Thus, plaintiff has failed to prove the first element of his conspiracy claim.  Second, Scallion has

presented no evidence to suggest that Myers had anything to do with the decision to arrest Scallion

or to search his vehicle.  Myers merely passed along information to Scott that Myers obtained from

an informant that illegal drugs were being brought into Red River Parish on July 30, 2004, by

Lambert in a green Ford pick-up truck.  Myers' presence at the scene of the stop is irrelevant to

7

plaintiff's claims as Myers took no action with regard to Scallion at the scene. Myers did not advise Scott or any of the other named defendants with regard to Scallion's arrest or the allegedly questionable search. There is simply no evidence that a conspiracy to violate Scallion's constitutional rights existed. Accordingly, plaintiff's claims against Myers are dismissed.

**B.    Claims Against Sidney Jacobs, John Mahfouz and Tracy Scott.**

According to the evidence before this Court and plaintiff's allegations, Scott told Jacobs to stop Scallion's green Ford pick-up, held Scallion at gun point as he ordered Scallion out of the car, performed a pat down search of Scallion and then handcuffed Scallion. According to plaintiff, thereafter, Scott coerced Scallion to consent to a search of his vehicle. Jacobs pulled over the Scallion truck, produced and read aloud a consent to search form for Scallion's signature and took part in the search of Scallion's vehicle. Mahfouz also participated in the search of Scallion's vehicle. Based on these allegations, plaintiff asserts §1983 claims for false arrest and illegal search and seizure.

1.    <u>False Arrest.</u>

Scallion asserts that his initial detention and eventual arrest were unconstitutional. Scallion further asserts that the defendants who did not directly participate in his detention and arrest are liable for their failure to prevent the alleged constitutional violation. Defendants assert, and this Court agrees, that Scallion's arrest was lawful regardless of whether it occurred when Scallion was initially handcuffed or following the search of his vehicle, and that defendants are, therefore, entitled to qualified immunity.

To prevail on a §1983 false arrest/false imprisonment claim, Scallion must show that defendants did not have probable cause to arrest him. <u>Haggerty v. Texas Southern University</u>, 391

8

F.3d 653, 655 (5th Cir. 2004). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001). Thus, Jacobs, Mahfouz and Scott are entitled to qualified immunity if reasonable officers in their positions could have believed that, in light of the totality of the circumstances of which they were aware, there was a fair probability that Scallion had committed or was committing an offense. See Haggerty, 391 F.3d at 655-656. "Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity." Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000) (emphasis added).

When Scallion was handcuffed, defendants were undisputedly aware of the following: that a conversation had taken place during which Lambert expressed an intent to transport illegal drugs into Red River Parish on July 30, 2004 in a green Ford pick-up truck; that Lambert was found in Red River Parish on July 30, 2004 driving the Ford pick-up truck; and that Scallion was a passenger in the vehicle driven by Lambert and believed to contain illegal drugs. Scott obtained the information regarding Lambert and the manner by which she intended to transport illegal drugs into Red River Parish from Myers, a Probation Officer for the State of Louisiana.

Scallion asserts that Scott "made no attempt to verify the information provided to him by [Myers] upon which he relied when he seized and searched the plaintiff on July 30, 2004." Complaint, ¶22. However, Scott had known Myers as a Probation Officer for approximately thirteen years and had successfully relied upon information provided him by Myers for the past ten years. Scott Aff., ¶3(b); Hrg. Tr., p. 70. Further, the person from whom Myers received the information regarding Lambert had previously provided reliable information. Hrg. Tr., pp. 25-26.

A reasonably competent police officer might rely without investigation on information from a trustworthy source. Hart v. O'Brien, 127 F.3d 424, 443 (5th Cir. 1997), abrogated on other grounds as recognized by Spivey v. Robertson, 197 F.3d 772, 775 (5th Cir. 1999) (citing Kalina v. Fletcher, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)).  Scott reasonably relied on a trustworthy source.  Thus, when Scallion was initially handcuffed, defendant had probable cause to arrest Scallion.  In other words, it was reasonable for Scott and his fellow Red River Parish Deputies to conclude that Scallion had committed or was committing an offense. See Glenn, 242 F.3d at 307.

This Court finds that defendants are entitled to qualified immunity regardless of when Scallion's arrest occurred.  Scallion was the owner of, and passenger in, a vehicle believed to be transporting illegal drugs. The search of Scallion's vehicle after Scallion was handcuffed confirmed the presence of a firearm and illegal drugs.  Thus, defendants reasonably concluded that Scallion had committed or was committing an offense following the search[4]. Id. at 751.  Scallion cannot satisfy his burden on summary judgment because arresting Scallion was not objectively unreasonable in light of the circumstances surrounding the incident.  See Tarver v. Edna, 410 F.3d 745, 750 (5th Cir. 2005).  Scallion's constitutional rights were not violated by defendants' actions in either detaining or arresting him.  Accordingly, defendants are entitled to qualified immunity as to plaintiff's false arrest claims.

2.      Illegal Search and Seizure.

Scallion asserts that his vehicle was illegally searched by defendants.  The relevant inquiry here is whether a reasonable officer could have believed defendants' warrantless search to be lawful,

---

[4]As discussed below, this Court finds that the search of Scallion's vehicle was lawful.

in light of clearly established law and the information the searching officers possessed. <u>Anderson</u>, 483 U.S. at 641, 107 S.Ct. at 3040. Under the automobile exception to the warrant requirement, officers may conduct a search if they have probable cause to believe that the vehicle contains contraband or evidence of a crime. <u>Mack v. City of Abilene</u>, 461 F.3d 547, 552-553 (5th Cir. 2006). As stated above, probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed. <u>Id.</u> at 553.

The undisputed evidence before this Court as described above shows that based on the corroborated information relayed to Scott, Jacobs and Mahfouz, it was reasonable for the law enforcement officers to believe that the vehicle contained contraband, namely illegal drugs. Accordingly, defendants are entitled to qualified immunity as to plaintiff's illegal search and seizure claim.

**II.     Claims Against Sheriff Johnny Ray Norman.**

Section 1983 does not impose individual liability on a Sheriff under theories of vicarious or <u>respondeat superior</u> liability. <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006); <u>see also</u> <u>Coleman v. Houston Independent School District</u>, 113 F.3d 528, 534 (5th Cir. 1997). The Fifth Circuit has stated that "[o]nly the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under §1983." <u>Id</u>. "[A] plaintiff must show either that the [Sheriff] was personally involved in the constitutional violation or that there is a sufficient causal connection between the [Sheriff's] conduct and the constitutional violation." <u>Kohler</u>, 470 F.3d at 1115.

It is undisputed that Sheriff Norman was not personally involved in the stop, arrest or search

11

of Scallion or the search of Scallion's vehicle.  See Affidavit of Johnny Ray Norman ("Norman Aff."), ¶2(a).  Further, Scallion makes no allegation that Sheriff Norman was personally involved in his arrest, imprisonment or the search of Scallion's vehicle.  Rather, Scallion alleges that Sheriff Norman is liable for his failure to supervise, oversee and train his deputies.  Complaint, ¶20.  Thus, Sheriff Norman could only be liable to Scallion under §1983 if plaintiff can show that Sheriff Norman implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights.  Cronn v. Buffington, 150 F.3d 538, 544 (5th Cir. 1998).

In Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 1205-06, 103 L.Ed.2d 412 (1989), the Supreme Court recognized that the inadequacy of police training may serve as the basis for a §1983 claim against a municipality through its policymaker "where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact."  Canton, 489 U.S. at 388, 109 S.Ct. at 1204.  For municipal liability to attach, there must first be an underlying constitutional violation.  See Roach v. Fredericktown, 882 F.2d 294, 298 (5th Cir. 1989). This Court has found no such violation.  Accordingly, plaintiff's claims against the Sheriff should be dismissed.

Further, plaintiff has made no showing of a policy or custom of the Red River Parish Sheriff's Office.  In his opposition, plaintiff merely references the "complete transcript of the state court Motion to Suppress hearing".  Plaintiff's Opp., p.2.  The transcript is specific to defendants' actions relevant to Scallion's arrest and the search of his vehicle.  The only "custom" the Court appreciates from having reviewed the suppression hearing transcript is that Sheriff's deputies follow through with corroborated tips received from trustworthy sources.  Such a custom is not constitutionally offensive.  See Hart, 127 F.3d at 443.  Thus, plaintiff has failed to meet his burden

12

of proof on summary judgment.

## **CONCLUSION**

For the reasons stated above, defendants' motions should be **GRANTED** and plaintiff's

claims against the remaining defendants, **DISMISSED**.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

13